## A90A0170. TUCKER v. COLONIAL INSURANCE COMPANY OF CALIFORNIA.
### (395 SE2d 64)

BEASLEY, Judge.

Plaintiff Tucker appeals the judgment entered on a jury verdict for defendant Colonial Insurance Company of California in his suit to recover approximately $50,000 in medical bills and lost wages allegedly due to personal injuries sustained in a single-vehicle mishap. The jury also found in the insurer's favor on a *Yost* counter-claim and awarded the sum of $1.

1. Tucker contends that the jury should not have been instructed on the defense of fraud because there was no evidence that the insurer was fraudulently induced to enter into the contract, no evidence of the insurer's reliance, no direct evidence of his misrepresentations or false claims, and no evidence of damage to the insurer.

The evidence construed so as to warrant the instructions established the following. On December 23, 1981, Tucker applied for automobile insurance coverage including maximum no-fault benefits. He signed the application, which answered "none" to the question whether applicant or anyone who usually drove the applicant's vehicle had been involved in any motor vehicle accident in the previous thirty-six months.

On October 2, 1982, Tucker alleged he "blacked out," lost control of his vehicle and hit a ditch, street sign, and some trees, damaging the vehicle and re-injuring his back, neck, arm, and legs. There were no known witnesses. The vehicle was found a little bit more than a car length off the roadway. There was only a slight grade in the roadway and no evidence of skid marks. The car had run over or into one-to-two-inch diameter trees, incurring minor damage to the front end and none to the interior. Based on the physical evidence, the investigating officer determined that the car drove from the road to its final resting point. It was old and of little monetary value, so Tucker was paid $150 for salvage value under the collision provisions, before full investigation.

At the time of the incident, Tucker did not report any physical injury to the investigating officer or to the emergency medical person. The latter's examination did not reveal any injuries. In order to avoid a traffic citation, Tucker requested that the officer not make out a report at the scene. A report was later made by another officer, apparently based solely on what Tucker told him.

Tucker reported the accident to the insurer on October 4 and gave a statement the following day. He was asked whether he had ever had any injuries similar to those he was reporting and he said he had had one prior accident two years before. He was then given an application for no-fault benefits.

Following the statement, the insurer requested an index bureau report, which revealed four previous accidents and injuries. Because Tucker had indicated he had only one accident, the insurer investigated further and received reports of more than twenty prior accidents and injuries.

At trial, Tucker admitted he injured his back, leg, and neck several times prior to October 2, specifically on January 22, 1978 (fell off roof of house injuring back); January 28, 1978 (injured back and neck in auto accident while driving home from hospitalization for January 22 injury); February 24, 1978 (injured back and neck in auto accident while leaving same hospital); September 23, 1978 (injured back and neck while refereeing a football game); January 14, 1979 (injured back and neck falling off ladder); January 29, 1979 (injured back and neck in auto accident); March 28, 1979 (injured back and neck falling from steps at home); July 13, 1979 (injured back and neck falling down flight of stairs); August 21, 1979 (injured back, neck, legs, and shoulders falling off kitchen counter); September 12, 1979 (injured back, neck, leg, and shoulders while passenger in auto accident resulting in filing of a lawsuit); March 21, 1980 (injured back, neck, legs, and shoulders in auto accident); and October 26, 1981 (injured back, neck, arm, and leg falling from a ladder). He testified that he did not remember incidents on January 2, 1981 (injuring back, neck, arm, and leg in auto accident) and on April 27, 1982 (injuring back, leg, arm, and neck falling off a chair).

Following the October 2 car wreck, the physician who performed the independent medical examination on behalf of the insurer did not find objective signs of injury and opined that the subjective findings had only questionable significance.

At the time of the wreck, Tucker had been employed with an automobile manufacturer for approximately sixteen years. A little over a week before the incident, on September 23, Tucker had called in sick complaining that his back was hurting, and he did not come to work at all from that time until October 2. He had missed a great deal of time from work due to health complaints. In May 1982, he was placed on long-term disability because he had been out for an aggregate total of a year. Because of work absences, on or about June 28, Tucker was notified that his benefits would be reduced beginning October 4, 1982, for the next six-month period.

When there is some evidence of fraud the issue should be decided by the jury. See, e.g., *Minuteman Press Intl. v. Hedrick*, 167 Ga. App. 453 (306 SE2d 718) (1983). " 'Fraud may not be presumed but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence.' OCGA § 23-2-57. . . ." Id.

Contrary to appellant's assertion, the defense of fraud alleged by the insurer was the making of false assertions in support of the no-

fault claim, not fraudulently inducing insurer to enter into the contract. However, there was evidence by virtue of the misrepresentation on the insurance application to support a claim of fraud in the inducement to contract.

As to Tucker's no-fault claim, there was ample evidence from which a trier of fact could have concluded that it was fraudulently made. There was evidence of his direct misrepresentation, the insurer's detrimental reliance thereon, and damage to the insurer by virtue of its property pay-out and extensive and costly investigation.

The trial court did not err in charging the jury on fraud.

2. The next contention is that the court erroneously applied OCGA § 51-12-1 (b) retroactively by admitting evidence of paid or available "collateral sources" of workers' compensation insurance and sick leave benefits.

There was no such objection below to the cited evidence, so the enumeration is not entitled to review. *Lowe v. Moore*, 170 Ga. App. 723 (2) (318 SE2d 193) (1984). We note that appellant himself testified without objection on cross-examination about benefits available to him. See *Eiberger v. Martel Electronic Sales*, 125 Ga. App. 253, 255-256 (6) (187 SE2d 327) (1972). Furthermore, although OCGA § 51-12-1 (b) may not be applied retroactively, see *Polito v. Holland*, 258 Ga. 54 (365 SE2d 273) (1988), the alleged error would concern the issue of damages and not liability resulting in no harm. See *Cannon v. Rithmire*, 156 Ga. App. 360, 361 (1) (274 SE2d 746) (1980).

3. The next contention is that the trial court should have granted a directed verdict on the *Yost* counterclaim.

The trial of the *Yost* claim was bifurcated. Tucker did not move for a directed verdict at the close of the evidence in the *Yost* segment but rather only after verdict on the main claim. The motion was premature as to the *Yost* claim because the insurer had not yet presented its evidence on the counterclaim. OCGA § 9-11-50 (a); *Heard v. Midwest Mut. Ins. Co.*, 167 Ga. App. 44, 45 (3) (306 SE2d 49) (1983). See *Williams v. Buckley*, 148 Ga. App. 778, 779 (3) (252 SE2d 692) (1979). Moreover, a timely motion would have been justly denied. *Barber v. Atlas Concrete Pools*, 155 Ga. App. 118 (1) (270 SE2d 471) (1980).

4. Tucker contends that the court did not apply its pretrial ruling on his motion in limine and thereby erroneously admitted evidence of prior or subsequent insurance claims.

The motion sought to exclude only evidence of previous insurance claims, not evidence of past injuries. Moreover, appellant did not object to the evidence of prior injury and cannot do so now. *Lowe*, supra. Any evidence of subsequent injury was likewise elicited from Tucker without appropriate objection or by Tucker himself on cross-examination.

5. As to the verdict and judgment being "contrary to the weight

of the evidence" there was *sufficient* evidence to support findings that the accident and claimed injuries were fraudulent, see Division 1, supra, and that Tucker failed to supply insurer with reasonable proof of his claim. " ' "We will not speculate as to what evidence the jury chose to believe or disbelieve; on appeal this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. [Cit.] Where the testimony of the plaintiff and the defendant is in conflict, the jury is the final arbiter [cit.]." ' " *Barber v. Wausau &c. Ins. Co.*, 184 Ga. App. 479 (362 SE2d 109) (1987).

6. Appellee insurer's motion for sanctions for frivolous appeal under Court of Appeals Rule 26 (b) is dismissed. In this case, there was a money judgment, albeit nominal. The rule applies only to those cases in which there is no money judgment.

7. Appellant's motion for attorney fees pursuant to OCGA § 9-15-14 for defense of appellee's motion for sanctions for frivolous appeal is dismissed. "[S]uch a motion properly addresses itself to the trial court for disposition." *Chrysler Corp. v. Marinari*, 182 Ga. App. 399, 403 (4) (355 SE2d 719) (1987); *Socolow v. Goodman*, 184 Ga. App. 103 (2) (360 SE2d 653) (1987); *Graves v. Graves*, 186 Ga. App. 140, 141 (2) (366 SE2d 809) (1988).

*Judgment affirmed. Motions dismissed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 6, 1990.

*Slater, Saginar & Gross, Edwin M. Saginar, Andrew N. Gross*, for appellant.

*Greene, Buckley, Derieux & Jones, Daniel A. Angelo, Mark D. Oldenburg, Margaret L. Milroy*, for appellee.